IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GRAPHIC ARTS MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| JANNIS LAVERNE PARSONS and MOFFITT EDUCATIONAL ENTERPRISES, INC. d/b/a COVERED BRIDGE MONTESSORI SCHOOL, | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Graphic Arts Mutual Insurance Company ("Plaintiff" or "GAMIC") and files this Complaint for Declaratory Judgment, against Jannis Laverne Parsons and Moffitt Educational Enterprises, Inc. d/b/a Covered Bridge Montessori School, alleging as follows:

1.

GAMIC is incorporated under the laws of the State of New York and duly authorized to conduct business in Georgia.

2.

Upon information and belief, Defendant Jannis Laverne Parsons ("Parsons") is a citizen of the State of Georgia and can be served upon by delivery of the Summons and Complaint to her place of residence at 3891 Heritage Oaks Dr. SW, Powder Springs, Georgia 30127. Defendant Parsons is subject to the jurisdiction and venue of this Court.

3.

Defendant Moffitt Educational Enterprises d/b/a Covered Bridge Montessori School ("Covered Bridge") is a Georgia corporation having its principal place of business in North Carolina. Covered Bridge can be served by delivery of the Summons and Complaint to its registered agent, Barbara Moffitt, at 208 Marvin Land Lane, Canton, Georgia 30115. Covered Bridge is subject to the jurisdiction and venue of this Court.

4.

This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 to determine the rights and obligations and resolve questions of actual controversy involving insurance policies that were issued by GAMIC to Covered Bridge.  The parties dispute their obligations under the relevant insurance policies referenced herein,

the parties' legal interests are directly adverse with respect to such performance, and the dispute is both ongoing and real.

5.

GAMIC seeks a declaration of its rights and/or obligations, if any, under the insurance policies issued to Defendant Covered Bridge in connection with the lawsuit filed in the State Court of Cobb County, Georgia, styled *Jannis Laverne Parsons v. Moffitt Educational Enterprises, Inc. d/b/a Covered Bridge Montessori School*, Civil Action No. 16-A-503-5 (the "Underlying Action"). A copy of the Summons and Complaint filed in the Underlying Action is attached hereto as Exhibit "A".

6.

The Court has subject matter jurisdiction in this matter under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between GAMIC and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of costs.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the events and/or omissions giving rise to this litigation occurred in this judicial district.

## UNDERLYING ACTION AND THE SUBJECT INCIDENT

8.

This Declaratory Judgment action arises out of a claim filed by Defendant Parsons as a direct result of the alleged negligent acts, omissions and conduct of Defendant Covered Bridge in connection with Defendant Parsons' arrest on January 26, 2014 ("Subject Incident").

9.

The Underlying Action sets forth specific causes of action against Defendant Covered Bridge for malicious prosecution, false arrest, punitive damages and attorney's fees.

10.

Specifically, Defendant Parsons alleges that Defendant Covered Bridge wrongfully accused her of committing fraud, embezzlement and conversion during the course of her employment in or around July 2010.

11.

Defendant Parsons further alleges she was arrested on January 26, 2014 on charges of felony theft and incarcerated for ten (10) days in the Cobb County Adult

4

Detention Center based on the allegations made by Defendant Covered Bridge against her.

12.

Upon information and belief, the Moffitts are the sole owners of Defendant Covered Bridge.

13.

GAMIC is providing a defense to Defendant Covered Bridge in the Underlying Action pursuant to its complete reservations of rights.  An Answer was filed on behalf of Defendant Covered Bridge on April 22, 2016.  A true and correct copy of the Answer in the Underlying Action is attached hereto as Exhibit "B".

**THE POLICIES**

14.

GAMIC issued insurance policy numbers CPP-3222601 and CULP-3222616 to Defendant Covered Bridge with policy periods from September 15, 2010 to September 15, 2011 ("the Commercial Package Policy" and "the Umbrella Liability Policy" respectively).  A true and correct copy of the Commercial Package Policy is attached hereto as Exhibit "C".  A true and correct copy of the Umbrella Liability Policy is attached hereto as Exhibit "D".

5

15.

The Commercial Package Policy expressly provides, in part, as follows:

**SECTION I – COVERAGES**
**COVERAGE  A  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1.    Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \* \* \* \* \*

**COVERAGE  B  PERSONAL AND ADVERTISING INJURY LIABILITY**
**1.    Insuring Agreement**
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

\* \* \* \* \* \* \*

## SCHOOL DISTRICT AND EDUCATORS LEGAL LIABILITY COVERAGE

**1.   Insuring Agreement**

a. We will pay for all "loss" resulting from a "claim" for a "wrongful act" to which this insurance applies. We will have the right and duty to defend an "insured" against any "suit" seeking such "loss" even if the allegations of the "suit" are groundless, false, or fraudulent. However, we will have no duty to defend an insured against any "suit" seeking "loss" to which this insurance does not apply. At our discretion, we may investigate any allegation of a "wrongful act" and settle any "claim" or "suit" that may result.

* * * * * * *

## SECTION II – EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE

**1.   Insuring Agreement**

a. We will pay on behalf of an insured "damages" from "claims" for 'employment-related practices" to which this insurance applies. We have no obligation under this insurance to make payments or perform acts or services except as provided for in this Insuring Agreement and in part II 2., Defense Of Claims, Administrative hearings And Settlement Authority, below.

d. All "claims" for "damages" based on or arising out of:
   (1) One "employment-related practice"; or
   (2) "Interrelated employment-related practices" by one or more insureds shall be deemed to be one "claim" and to have been made at the time the first of those "claims" is made against any insured.

**********

7

16.

The Umbrella Liability Policy expressly provides, in part, as follows:

**SECTION I – COVERAGES**

    **COVERAGE  A  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.

* * * * * * *

**COVERAGE  B  PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**    **Insuring Agreement**

        a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against

8

any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.

\* \* \* \* \* \* \*

## COUNT I
### (Bodily Injury Exclusion)

17.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

18.

With respect to Bodily Injury and Property Damage Liability, the Commercial Package Policy expressly states:

2.  Exclusions

This insurance does not apply to:

e.  Employer's Liability
    "Bodily injury" to:
    (1)   An "employee" of the insured arising out of and in the course of:
          (a)   Employment by the insured; or
          (b)   Performing duties related to the conduct of the insured's business; or
    (2)   The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

9

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

19.

With respect to Bodily Injury and Property Damage Liability, the Umbrella Liability Policy expressly states:

2.   Exclusions

This insurance does not apply to:

a.   Expected or Intended Injury
"Bodily injury" or "property damage" expected or intended from the Standpoint of the insured.

20.

To the extent Parsons seeks damages for bodily injury as a result of malicious prosecution and/or false arrest arising out of and in the course of employment by Covered Bridge or performing duties related to the conduct of Covered Bridge's business, the Commercial Package Policy does not provide coverage to Covered Bridge.

21.

To the extent Parsons seeks damages for bodily injury expected or intended from the standpoint of Covered Bridge, the Umbrella Liability Policy does not provide coverage to Covered Bridge.

22.

Because there is no coverage under the Commercial Package Policy or the Umbrella Liability Policy (collectively "Policies"), Covered Bridge is not entitled to a defense, indemnity, or any other coverage under these Policies in connection with the Underlying Action.

## COUNT II
### (Bodily Injury – Employment-Related Practices Exclusion)

23.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

24.

With respect to Bodily Injury and Property Damage Liability, the Commercial Package Policy and the Umbrella Liability Policy expressly state:

This insurance does not apply to:

"Bodily injury" to:

11

    (1)    A person arising out of any:

        (a)    Refusal to employ that person;

        (b)    Termination of that person's employment; or

        (c)    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person.

\* \* \* \* \* \* \*

This exclusion applies:

(1)    Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2)    Whether the insured may be liable as an employer or in any other capacity; and

(3)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

25.

To the extent Parsons seeks damages for bodily injury as a result of malicious prosecution occurring before, during or after her employment with Covered Bridge, the Policies does not provide coverage to Covered Bridge.

26.

Because there is no coverage under the Policies, Covered Bridge is not entitled to a defense, indemnity, or any other coverage under the Commercial Package Policy

or the Umbrella Liability Policy in connection with the Underlying Action.

## COUNT III
### (Personal and Advertising Injury – Employment-Related Practices Exclusion)

27.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set

forth herein.

28.

With respect to Personal and Advertising Injury Liability, the Commercial

Package Policy and the Umbrella Liability Policy expressly state:

This insurance does not apply to:

"Personal and advertising injury" to:
  (1)    A person arising out of any:
      (a)    Refusal to employ that person;
      (b)    Termination of that person's employment; or
      (c)    Employment-related practices, policies, acts or omissions,
             such as coercion, demotion, evaluation, reassignment,
             discipline, defamation, harassment, humiliation or
             discrimination or malicious prosecution directed at that
             person.

* * * * * * *

This exclusion applies:

(1)     Whether the injury-causing event described in Paragraphs (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2)     Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

29.

The Umbrella Liability Policy further provides "[p]ersonal and advertising injury" means injury including mental anguish, shock or humiliation; other than "bodily injury"; arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

\* \* \* \* \* \* \*

30.

To the extent Parsons seeks damages for personal and advertising injury as a result of malicious prosecution occurring before, during or after her employment with Covered Bridge, the Policies do not provide coverage to Covered Bridge.

14

31.

Because there is no coverage under the Commercial Package Policy, Covered Bridge is not entitled to a defense, indemnity, or any other coverage under the Commercial Package Policy in connection with the Underlying Action.

## COUNT IV
### (School District and Educators Legal Liability – Personal Injury Exclusion)

32.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

33.

The School District and Educators Legal Liability Coverage Form in the Commercial Package Policy expressly states:

**2.    Exclusions**

This insurance does not apply to:

b.      "Loss" for "personal injury."

c.      Any dishonest, fraudulent, malicious, or criminal conduct of an insured. This exclusion applies only to insureds who participated in, acted with knowledge of, or acquiesced to such conduct.

34.

The Coverage Form also provides:

**SECTION VIII – DEFINITIONS**

6.    "Personal injury" means injury arising out of one or more of the
      following offenses:
      a.   False arrest, detention, or imprisonment;
      b.   Malicious prosecution.

* * * * * * *

35.

To the extent Parsons seeks damages for personal injury arising out of false

arrest, detention, imprisonment or malicious prosecution, the Commercial Package

Policy does not provide coverage to Covered Bridge.

36.

Because there is no coverage under the Commercial Package Policy, Covered

Bridge is not entitled to a defense, indemnity, or any other coverage under the

Commercial Package Policy in connection with the Underlying Action.

16

## COUNT V
### (Employment-Related Practices Conditions)

37.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set

forth herein.

38.

The Employment-Related Practices Liability Coverage Form in the Commercial

Package Policy states in part(s):

THIS COVERAGE IS LIMITED TO THOSE CLAIMS THAT ARE FIRST
MADE AGAINST THE INSURED DURING THE "POLICY PERIOD" OR
ANY OTHER EXTENDED REPORTING PERIOD.

SECTION 1 – DEFINITIONS
1.  "Claim" means a written or oral notice presented by:
    a.  Any of your "employees", "leased workers", "temporary workers",
        former "employees" or applicants for employment;
    b.  The legal representative of any individual in 1 1.a. above; or
    c.  The EEOC or any other federal, state or local administrative or
        regulatory agency on behalf of any person in part 1 1.a above; that the
        insured is responsible for "damages" as a result of injury arising
        out of an "employment-related practice."

39.

Under the Commercial Package Policy, "claim" is defined as any civil

proceeding in which either "damages" are alleged or fact finding will take place, when

17

either is the actual or alleged result of an "employment-related practice" to which this insurance applies.

40.

The "Employment-related practices" listed in the Commercial Package Policy are as follows:

(1) Wrongful refusal to employ a qualified applicant for employment;
(2) Wrongful failure to promote or wrongful deprivation of career opportunity;
(3) Wrongful demotion, negligent evaluation, negligent reassignment or wrongful discipline;
(4) Wrongful termination or employment, including retaliatory or constructive discharge;
(5) Employment related misrepresentation;
(6) Harassment coercion, discrimination or humiliation as a consequence of race, color, creed, national origin, marital status, medical condition, gender, age, physical appearance, physical or mental impairments, pregnancy, sexual orientation or sexual preference or any other protected class or characteristic established by an applicable federal, state or local statute; or
(7) Oral or written publication of material that slanders, defames or libels; or violates or invades a right of privacy.

41.

To the extent Parsons seeks damages for malicious prosecution and false arrest under the Commercial Package Policy, these causes of action are not listed as one of the "employment-related practices" to which coverage applies.

42.

Because there is no coverage under the Commercial Package Policy, Covered Bridge is not entitled to a defense, indemnity, or any other coverage under the Commercial Package Policy in connection with the Underlying Action.

## COUNT VI (Automatic Extended Reporting Period) DECLARATORY JUDGMENT

43.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

44.

Section VII of the Commercial Package Policy refers to Extended Reporting Periods and provides as follows:

1. We will provide an Automatic Extended Reporting Period as described in Paragraph VII 3., or if the first Named Insured purchases it, an Optional Extended Reporting Period Endorsement as described in paragraphs VII 4. and  VII 5. Below, in the event of any "termination of coverage."

2. a. If we provide an Extended Reporting Period, a "claim" first made during the Extended Reporting Period will be deemed to have been made during the "policy period," provided that the "claim" is for "employment-related practices" which took place before the end of the "policy period" of this insurance (but not before any applicable Retroactive Date).

      b.   Extending Reporting Periods:

          (1)   Do not extend the "policy period" or change the scope of coverage provided;

          (2)   Do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this insurance applies;

          (3)   Apply only to the coverage terminated or reduced; and

          (4)   Apply only as excess insurance over any other valid and collectible insurance available to the insured, whether primary, excess, contingent, or on any other basis, whose policy period begins or continues after the Extended Reporting Period takes effect.

3.    Automatic Extended Reporting Period
The Automatic Extended Reporting Period is provided without additional charge. This period starts at the end of the "policy period" and lasts:

      a.     Five years for "claims" arising out of "employment-related practices" reported to us, no later than 60 days after the end of the "policy period," in accordance with Condition 2. Of Section VI; or

      b.     Sixty days for all other "claims."

*****

45.

To the extent Covered Bridge seeks a defense or indemnification for Parsons' claims under the Commercial Package Policy, the Automatic Extended Reporting Period expired.

46.

Because there is no coverage under the Commercial Package Policy, Covered Bridge is not entitled to a defense, indemnity, or any other coverage under the Commercial Package Policy in connection with the Underlying Action.

## COUNT VII
### (Claims Made Limitation)

47.

GAMIC repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

48.

The Umbrella Liability Policy contains an endorsement, which states in relevant part(s):

> This endorsement provides Excess / Umbrella Coverage for Wrongful Acts provided by the Claims-Made Coverage forms shown in the Schedule of Underlying Insurance. This endorsement modifies insurance provided under the Commercial Liability Umbrella Coverage Form but only with respect to Coverage C - Excess / Umbrella Wrongful Acts Coverage.

> Unless otherwise noted, this insurance is subject to the same exclusions and definitions as the applicable "underlying insurance" shown in the Commercial Liability Umbrella Declarations.

49.

To the extent Parsons seeks damages under the Umbrella Liability Policy, coverage is limited to the claims first made against Covered Bridge during the policy period or any other extended reporting period.

50.

Upon information and belief, Parsons' claims are excluded under the Umbrella Liability Policy because the alleged acts did not occur during the policy period or any other extended reporting period.

51.

Because there is no coverage under the Umbrella Liability Policy, Covered Bridge is not entitled to a defense, indemnity, or any other coverage under the Umbrella Liability Policy in connection with the Underlying Action.

WHEREFORE, GAMIC respectfully requests that the Court enter declaratory judgment in GAMIC's favor as follows:

(1)     Declaring that to the extent Parsons seeks damages for bodily injury as a result of malicious prosecution occurring before, during or after her employment with Covered Bridge, the Policies do not provide coverage to Covered Bridge and Covered Bridge is not entitled to a defense,

indemnity or any other coverage in connection with the Underlying Action;

(2)     Declaring that to the extent Parsons seeks damages for a personal and advertising injury as a result of malicious prosecution occurring before, during or after her employment with Covered Bridge, the Policies do not provide coverage to Covered Bridge and Covered Bridge is not entitled to a defense, indemnity or any other coverage in connection with the Underlying Action;

(3)     Declaring that to the extent Parsons seeks damages for personal injury arising out of false arrest, detention, imprisonment or malicious prosecution, the Policies do not provide coverage to Covered Bridge and Covered Bridge is not entitled to a defense, indemnity or any other coverage in connection with the Underlying Action;

(4)      Declaring that to the extent Parsons seeks damages for malicious prosecution and false arrest, the Commercial Package Policy does not provide coverage to Covered Bridge because these causes of action are not listed as one of the enumerated "employment-related practices" to which coverage applies and Covered Bridge is not entitled to a defense,

23

indemnity or any other coverage in connection with the Underlying Action;

(5)     Declaring that to the extent Covered Bridge seeks a defense or indemnification for Parsons' claims under the Policies, the Automatic Extended Reporting Period expired and Covered Bridge is not entitled to a defense, indemnity or any other coverage in connection with the Underlying Action;

(6)     Declaring that to the extent Covered Bridge seeks a defense or indemnification for Parsons' false arrest or malicious prosecution claims, GAMIC has no continuing duty to provide a defense to Covered Bridge or any other entities or persons insured under the above-referenced policies attached hereto; and,

(7)     Awarding such other and further relief as the Court may deem equitable and just.

This 12th day of August, 2016.

[SIGNATURES TO FOLLOW ON NEXT PAGE]

24

**GRAY, RUST, ST. AMAND,**
**MOFFETT & BRIESKE, LLP**
950 East Paces Ferry Road
1700 Atlanta Plaza
Atlanta, Georgia  30326
Telephone:  (404) 870-7390
Facsimile:   (404) 870-1030
mmoffett@grsmb.com
tevans@grsmb.com

/s/ Tynetra G. Evans_____
Matthew G. Moffett
Georgia Bar No. 515323
Tynetra G. Evans
Georgia Bar No. 422171
*Counsel for Plaintiff Graphic Arts*
*Mutual Insurance Company*